## Eckman *versus* Eckman.

1. A deed made in the course of a proposed family arrangement, delivered only as an escrow and by some means finding its way on to the record, would be such a cloud upon the grantor's title, that the arrangement failing he would have the right to demand the cancellation of the deed.

2. A man has not an absolute right to the interference of a court of chancery to relieve him against his voluntary act, but it is a matter of sound discretion to be exercised by the court according to its own notion of what is reasonable and proper under all the circumstances of the particular case.

3. If an instrument ought not to be used or enforced, it is against conscience for the party to retain it, since he can retain it only for a sinister purpose and the other party is entitled to relief *quia timet.*

4. In general the answer of one co-defendant cannot be read in evidence against another, because, as there is no issue between them, there can have been no opportunity of cross-examination.

5. The rule does not apply where the other defendant claims through the one whose answer is offered, nor where they have a joint interest in the transaction.

6. A deed need not be delivered to the grantee himself, a delivery to another for him and to his use is sufficient.

7. If it have passed from the control of the grantor by his own act, with declarations that it is delivered for the use of the grantee, it will have the same effect in the hands of the custodian, though a stranger, as if delivered to the party himself.

8. The plaintiff alleged that he had voluntarily conveyed land to two nephews, in fee, subject to a life estate in himself, on condition that they would make amicable partition, which they refused to do, and he prayed that his deed might be cancelled. *Held,* that as this did not becloud his title but left his life estate untouched, he was not entitled to relief *quia timet.*

May 14th 1867.　Before Woodward, C. J., Thompson and Agnew, JJ.　Strong and Read, JJ., absent.

Appeal from the decree of the Court of Common Pleas of *Lancaster county.*　In equity.

David Eckman brought his bill, March 10th 1864, against Benjamin Eckman and Daniel Eckman, Jr.

The bill averred that the complainant was seised in fee of a tract of 100 acres of land, was unmarried and without children, and that the defendants are his nephews; that the defendants' father devised to them a tract of above 100 acres of land; that the complainant, from feelings of kindness, prior to September 6th 1859, made a parol promise to them that if Daniel Jr. would convey to Benjamin his interest in the farm devised by their father, and Benjamin would convey to Daniel, Jr., his undivided half of the farm about to be conveyed to them by the complainant,

he would convey to them his said tract of land in fee, subject to his right to retain the rents and profits during his life; that in pursuance of his promise, the complainant, on the 6th day of September 1859, executed to defendants a deed for his land, subject, as above mentioned, for the nominal consideration of $8000, " which he intended to deliver to the defendants upon their performance of the conditions upon which he promised to make the conveyance;" that the deed was sent by the complainant to John Strohm, a conveyancer, to be held until the necessary writings were executed by the defendants, when all the writings were to be delivered at one time to the parties entitled to them in completion of the arrangement, but that Daniel, Jr., refused to perform his part of the condition; the whole arrangement failed, and the deed was never delivered; that no part of the consideration was intended to be paid, but it was introduced into the deed as a mere matter of form. The bill further averred that after the arrangement thus failed, the complainant demanded the deed, but that Strohm, under the instructions of Daniel, Jr., refused to deliver it to the complainant; subsequently, by instructions from Daniel, Jr., caused it to be recorded, and afterwards delivered it to the complainant.

The bill prayed that the deed and the record of it be declared null and void, and that the record may be directed to be cancelled.

Daniel, Jr., filed an answer, admitting the devise by his father, who died August 15th 1862, and averring that the complainant "executed and delivered" to the two respondents the deed of his land as stated in the bill, and the deed was immediately handed to Jacob Eckman for convenience and safe keeping, and that it remained in his possession until his death, except for a short time, when taken by Daniel, Jr., to counsel for examination; that the conveyance was made in pursuance of an amicable family arrangement between the complainant and his brother; the answer admitted that no part of the $8000 has been paid, or was intended to be; but denied that the deed was made in pursuance of promise or condition of the two respondents conveying the land to each other, as alleged in the bill; the answer further averred that after the death of their father, Benjamin proposed to Daniel, Jr., to make an amicable partition of the two plantations; Benjamin to take that devised by their father, and Daniel, Jr., that conveyed by complainant, to which Daniel, Jr., agreed, on condition that Benjamin would pay to complainant one-half the rents and profits of his farm during his life, to which Benjamin at first assented, and for the purpose of carrying out the arrangement, the deed from the complainant, which after the death of their father came into the possession of Benjamin, was handed by him to Strohm to draw the necessary papers, but that Benjamin afterwards refused to carry out the agreement for partition; that the propriety of

[Eckman *v.* Eckman.]

recording the deed was suggested by Strohm, and at the request of Daniel, Jr., it was recorded, and afterwards returned to the custody of Benjamin ; he denied that the deed was sent by the complainant to Strohm, and averred that the deed was never in the possession of the complainant after its execution.    The answer further alleged that the complainant is above eighty-three years of age, had become enfeebled in intellect, and his mind and memory much impaired ; that Benjamin, taking advantage of this weakness, had, by fraudulent misrepresentations, &c., prejudiced the complainant, and alienated his affection from Daniel, Jr., and unduly influenced him to abrogate the disposition of his property made by his deed, in order to make a disposition more favorable to Benjamin, and that the suit was brought under such undue influence.

Benjamin answered, admitting all the material allegations in the bill, and denying that he ever refused to deliver the deed for cancellation, or ever claimed the benefit of it; saying that he does not know that Daniel, Jr., claims any title under the deed, but is informed and believes that he occupies the farm under a lease from complainant.

The complainant replied by a general traverse.    An examiner was appointed, and much testimony was taken bearing upon the arrangement made by the complainant, and the delivery of his deed.

The court below dismissed the bill, which, upon an appeal by the complainant, was assigned for error.

*D. G. Eshelman* and *D. W. Patterson*, for appellants.—The jurisdiction of a court of equity in this case is proved by Acts of 13th June 1840, § 39, Pamph. L. 671 ; 16th April 1845, § 3, Pamph. L. 542 ; 14th February 1857, § 1, Pamph. L. 39, Purd. 402, pl. 5, 6, 11.    The cancellation or delivery of instruments falls within the heads of equity jurisdiction in cases of fraud, accident and mistake : Brightly's Eq. § 119 ; 2 Story's Eq. Jur. § 692–700 ; Yard *v.* Patton, 1 Harris 281 ; Duncan's Appeal, 7 Wright 67.

There being in this case a general replication, the answer may be read by plaintiff to support his case : Brightly's Eq. §§ 717, 720, 721 ; 2 Danl. Ch. Pr. 399, 400, 404.

Where the answer, admitting or denying the facts in the bill, sets up other facts in defence or avoidance, such answer is no proof of the facts thus stated : Eberle *v.* Groff, 9 Harris 252 ; 2 Story's Eq. Jur. § 1529 ; Coleman *v.* Ross, 10 Wright 180.

The deed was delivered as an escrow, a writing which is not to take effect as a deed till the conditions be performed : 2 Bl. Com. 37.

To make the delivery conditional, it is not necessary that any

[Eckman *v.* Eckman.]

express words should be used at the time ; the conclusion is to be drawn from all the circumstances : Murray *v.* Earl of Stair, 2 B. & C. 88 ; Johnson *v.* Baker, 4 B. & A. 440 ; 4 Kent Com. 454 ; Boardman *v.* Dean, 10 Casey 254.

The general rule that the answer of one defendant in chancery cannot be read against his co-defendant, does not apply where they have a joint interest : 1 Greenl. Ev. § 178 ; Cross *v.* Bedinfield, 12 Sim. 35 ; Osborn *v.* U. S. Bank, 9 Wheat. 738, 832.

It was necessary to make Benjamin a party defendant.   On his answer and disclaimer complainant is entitled to a decree against him.   If against him, it must be also against Daniel : Green *v.* Pledger, 3 Hare 172 ; Duncan's Appeal, 7 Wright 67.

It is no objection to a decree for plaintiff that it may settle a controversy between the defendants : Lord Eldon, 2 Sch. & Lef. 718.

*T. E. Franklin*, for D. Eckman, Jr., appellee.—It is a strict rule that the answer of one defendant shall not be read in evidence against another ; the reason being that there is no issue between the parties, and there has been no opportunity for cross-examination : Gresley's Eq. Ev. 29, 338 ; 11 Lib. of Law & Eq. 231. There is no exception to this rule except the case of partners, or where a party comes in as the successor of another *post litem motam*, as in Osborn *v.* U. S. Bank, 9 Wheat. 738 ; Hill *v.* Adams, 2 Atk. 39 ; Chewett *v.* Jones, 6 Mad. 267 ; Montague *v.* Hill, 4 Russ. 128 ; Morse *v.* Royal, 12 Ves. 355 ; Field *v.* Holland, 6 Cranch 8 ; Clark's Ex'rs. *v.* Van Reimsdyke, 9 Id. 153 ; Christie *v.* Bishop, 1 Barb. Ch. R. 105, 120 ; Winters *v.* January, Litt. Sel. Cas. 13.

The oath of a single witness cannot prevail against the distinct and positive assertions contained in the answer : Gresley's Eq. Ev. 4, 227 ; 11 Lib. of Law & Eq. 3, 156 ; Eberly *v.* Groff, 9 Harris 251.

A deed may be delivered to the party himself to whom it is made, or to any other person, by sufficient authority from him ; or it may be delivered to any stranger for and on behalf and to the use of him to whom it is made without authority : Shep. Touch. 57 ; 4 Cruise's Dig. 28, tit. *Deed*, ch. 2, § 52.

The opinion of the court was delivered, July 3d 1867, by

Woodward, C. J.—Daniel Eckman and Jacob Eckman were brothers, and each owned a farm in Strasburg township, Lancaster county.   Jacob had two sons, the present defendants, whose names were Benjamin and Daniel, Jr., but Daniel Eckman, the elder, the plaintiff, had no sons.   Jacob Eckman, before his death, made his will, devising his farm to his two sons, and Daniel made a deed of his farm to them also, reserving to himself a life estate.

[Eckman *v.* Eckman.]

This deed was placed in the hands of Jacob, whether as an escrow or as an absolute delivery was a disputed point, and after the death of Jacob it was delivered by the sons or one of them to John Strohm, who placed it upon record. Though it expresses a consideration of $8000, it was a voluntary settlement.

It is this deed which Daniel, the uncle, now seeks to cancel. His will alleges a parol agreement between the nephews, that Daniel, Jr., was to release to Benjamin all his interest in the farm devised to them by their father, and Benjamin was to release to Daniel, Jr., all his interest in the farm conveyed to them by the uncle ; that with a view of carrying out this arrangement the deed was made and sent to Strohm, a conveyancer, to prepare the necessary papers, and was not to be delivered till the partition was completed. The bill then alleges that Daniel, Jr., subsequently refused to perform his part of the condition, whereupon the arrangement failed and the deed was not delivered. Founding himself upon these allegations the plaintiff asks for a decree cancelling the deed and the record of it.

If the case made by the bill were supported by the answer and proofs, the plaintiff would have an equitable right to demand the cancellation of the deed, for a deed made in the course of a proposed family arrangement, and only delivered as an escrow, and yet by some means finding its way upon the record, would be such a cloud upon the grantor's title that, the arrangement failing, he would have good right to demand cancellation of the deed. Bills for this purpose belong to the head of relief, which is technically called *quia timet*, and are very common in the equity jurisdiction. Not indeed that a man has an absolute right to the interference of a Court of Chancery to relieve against his own voluntary act, but it is a matter of sound discretion to be exercised by the court, either in granting or refusing the relief prayed, according to its own notion of what is reasonable and proper under all the circumstances of the particular case. Not only are accident, mistake and fraud recognised grounds of relief, but if an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for a sinister purpose, and, according to Judge Story, the modern decisions entitle him to relief *quia timet:* 1 Story's Eq. § 700.

But the case is to be viewed not only as presented in the plaintiff's bill, but also in the answers and proofs. The defendants sever in their answers, Benjamin confessing all the allegations of the bill, and Daniel, Jr., alleging that his uncle's deed was delivered to his father, Jacob Eckman, who took charge thereof for and at the request of the defendants for convenience and safe-keeping, and that it so remained in his possession to the time of his death, except for a short time when the respondent took it to

5 P. F. Smith—18

Lancaster to be examined by counsel; that the conveyance was made in pursuance of an amicable family arrangement between him and his brother, by which they agreed upon the manner in which their several estates were to be settled and disposed of—and he admits that no part of the $8000 consideration-money was paid or ever intended to be paid. The respondent further answers that after his father's death, his brother Benjamin proposed to make partition of the two plantations by taking to himself the farm devised by their father, the respondent to take that which their uncle had conveyed to them; and the respondent, although the plantation devised to them by their father was greater in size and value, agreed to the proposition of his brother on condition that the said Benjamin would make provision for the payment of one-half of the rents, issues and profits thereof to said Daniel Eckman, the complainant, during his natural life, as an equivalent for his share of the reservation to that effect contained in the deed of the complainant to them. And he alleges that Benjamin at first assented to this condition, and that they took the deed of their uncle to John Strohm, Esq., for the purpose of having the necessary papers drawn to effectuate this arrangement; but afterwards the said Benjamin refused to complete the arrangement. He then charges that the uncle is upwards of eighty-three years of age, and has become enfeebled in intellect, and that his brother Benjamin, taking advantage of this weakness, has, by undue influence, prejudiced the said complainant against the respondent, and alienated his natural affections.

According to the answer, it would seem that it is a fraternal feud which has prevented the consummation of this family arrangement; but, as the complainant's life estate, reserved by his deed, is secure to him, it is not easy to see how his interests are impaired or affected by the disagreement between his nephews. However much he may regret that brethren cannot dwell in harmony, his rights of property do not seem to require protection from a court of equity, and the bill is not to be sustained merely to quell the fraternal discord.

Whilst the issue between the brothers is not directly before us, it may not be amiss for us to intimate that the condition insisted on by Daniel as to half the rents during the uncle's life seems to us to be reasonable, and, indeed, necessary, if equality of partition is to be effected, for, as Benjamin was to enter at once into the exclusive enjoyment of the patrimonial acres, and Daniel's right of possession of the uncle's farm must await his death, he would be without land or its profits, unless Benjamin should yield a half rent during the uncle's life.

Now as to the proofs. Having seen how the matter stands upon the bill and answer, it is very material to see whether the proofs establish a delivery of the complainant's deed, for this is a

[Eckman v. Eckman.]

vital point upon which the bill and answer are in direct antago-
nism. .If the deed was delivered, an estate in remainder vested
in the defendants as tenants in common, and no discords between
them would entitle the grantor to have it cancelled. On this
point the testimony of several witnesses bears with considerable
weight.

Daniel Truston swears that the complainant told him he was
going to leave the deed with his brother Jacob for safe keeping,
and then at his death he was to deliver it over to Benjamin and
Daniel, and afterwards both Jacob and Daniel told the witness it
was so left with Jacob. Daniel said it was for the boys, Benjamin
and Daniel. Daniel Lefevre proves Benjamin's declarations at
the appraisement of his father's estate to the same effect. Jacob
B. Amwake saw the deed and will in the hands of Benjamin and
Daniel, Jr., in September or October 1859. Several other wit-
nesses prove Benjamin's declarations recognising the conveyance
of the estate as a vested title, while Mr. Strohm, to whom the
brothers brought the deed, understood so clearly that it was an
executed and delivered conveyance, that he advised them to
record it, and at the instance of Daniel took it to Lancaster and
had it recorded, and received it back from the recorder, refusing
to deliver it to the grantor upon demand from him.

On the part of the complainant we have the testimony of Mr.
Patterson, which, though it explains the testimony of Mr. Strohm,
does not materially contradict him upon the point now under con-
sideration—the delivery of the deed. And the answer of Benja-
min Eckman is relied on as disproving the delivery.

In general the answer of one defendant in chancery cannot be
read in evidence against his co-defendant, the reason being that as
there is no issue between them, there can have been no oppor-
tunity for cross-examination. But this rule does not apply where
the other defendant claims through him whose answer is offered
in evidence; nor to cases where they have a joint interest,
either as partners, or otherwise, in the transaction: 1 Greenl.
Ev. § 178.

Benjamin's answers are evidence against himself, but as the
interests which he and his brother had, both under the will of
their father and the deed of their uncle, are not those of joint
tenants, but of tenants in common, he comes within the rule which
excludes his answers as against his brother and co-defendant: see
Gresley's Eq. Ev. p. 29.

So stand the proofs upon the question of delivery, and we
think they fully justified the conclusion of the court below that
the deed had been well delivered. A deed need not necessarily
be delivered directly to the grantee himself; a delivery to any
other person for him, and to his use, is sufficient. If it have
passed beyond the control of the grantor by his own act, accom-

[Eckman *v.* Eckman.]

panied with declarations that it is delivered for the use and benefit of the grantee, it shall have the same effect in the hands of the custodian, though a stranger, as if delivered to the party beneficially entitled.

What equity, then, has the complainant to cancel a conveyance fairly made and sufficiently delivered? No accident, fraud or mistake is alleged, and no circumstance that seems to entitle him to relief on the principles of *quia timet*. The ground of complaint is the failure of the brothers to come to an amicable partition. But this circumstance does not impair, nor even becloud, the complainant's title. His life estate is untouched by their discords. And their own estates, as to their titles, is unimpaired by their inability to enjoy them in severalty. A little more time and reflection may bring them to a better mind, and enable them to make an amicable partition, but meanwhile they hold securely as tenants in common, and neither they nor their uncle seem to require the interposition of a court of equity to protect their rights of property.　　　　　The decree is affirmed.