## Perry *versus* Dicken.

| | |
|---|---|
| 105 | 83 |
| c202 | 20 |
| 105 | 83 |
| e208 | 619 |
| 105 | 83 |
| f211 | 104 |

An attorney at law in Pennsylvania may contract with his client to render professional services for a contingent fee, notwithstanding it is understood at the time by both that the attorney will be an indispensable witness on behalf of his client in the cause; and such contract, after the client's success has been established, may be enforced in an action by the attorney against his former client.

PAXSON, TRUNKEY and STERRETT, JJ., dissented.

January 16, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county*: Of July Term, 1883, No. 58.

Assumpsit, by J. Charles Dicken against Emma M. Perry. The narr. consisted of the common counts. The bill of particulars contained the following item: "For professional services in the preparation and trial of the case, Emma M. Perry v. Hugh Perry, ejectment, etc. . . . . . and thereafter preparation for and argument in Supreme Court, . . . . . $5,000." Pleas, non assumpsit, set-off, payment with leave, &c.

[Perry *v.* Dicken.]

On the trial, before LUDLOW, P. J., the plaintiff, a member of the bar of Allegheny county, claimed to recover on a verbal contract alleged to have been made between himself and the defendant in April, 1873, whereby, as her attorney at law, he undertook, in connection with other counsel, to prosecute a certain action of ejectment then pending between the said Emma M. Perry, plaintiff, and Hugh Perry, defendant, in the District Court of Allegheny county, and in case the plaintiff succeeded in recovering the property in dispute she agreed to pay him a fee of $5,000 contingent on such success. The defendant denied that she made any such contract.

It appeared that at that time Mr. Dicken was, owing to the recent death of a witness, the only surviving witness of the facts mainly relied on to prove the plaintiff's case in said ejectment suit. It further appeared that the plaintiff's claim in said ejectment was to this effect: John F. Perry, father of Emma M. Perry, was in his lifetime the owner of certain valuable real estate in the city of Pittsburgh. Becoming embarrassed, he, in 1863, executed a deed, absolute on its face, conveying said real estate to his brother, Hugh Perry. Said deed was prepared by Mr. Dicken, who was also present at its execution; the only other witness, one Abraham Patterson, died shortly before the ejectment was tried. The plaintiff in said ejectment, by Dicken as her principal witness, set up that although said deed from John F. Perry to Hugh Perry was absolute on its face, it was executed, delivered and accepted upon the parol agreement and trust that Hugh Perry was to raise $15,000 by a mortgage on the property conveyed, with which sum John F. Perry's debts were to be paid, and Hugh Perry should retain the property until he should repay himself out of the rents, etc., the amount of John F. Perry's debts which he might pay, with interest, and thereupon he, the said Hugh Perry, would re-convey said property to John F. Perry; that Hugh Perry, in part execution of said parol trust, raised the money by mortgage, paid said debts, and subsequently was himself fully repaid, with interest, all the sums so paid by him to John F. Perry's creditors; but that Hugh Perry, after the death of John F. Perry, in 1868, repudiated said parol trust, and refused to re-convey the said real estate.

On the present trial Mr. Dicken testified that after John F. Perry's death Mrs. Perry, his widow, consulted him in relation to recovering the property, in consequence of which he expended much labor in the examination of records and otherwise with the view of bringing suit; that the suit was brought by Messrs. Weir and Gibson and Mr. Bigham, as attorneys of record for Mrs. Perry, guardian of Emma M. Perry, then a minor, Mr. Dicken's name not appearing as attorney of record;

that by arrangement with Mrs. and Miss Perry and the other counsel in the cause, he acted professionally in the preparation of the cause, subpœnaing of witnesses, etc., etc.; that Mrs. Perry called on him a short time before the trial with her daughter, the defendant, and told him that they had fixed his fee, if they were successful, at $5,000, and Emma M. Perry then said, "Yes, Mr. Dicken, if you are successful we will even do better by you; the case is in your hands and we depend upon you"; and that he assented to this offer. Dicken's testimony as to this interview was substantially corroborated by three persons, two of whom were then students in his office, and the other had desk room there.

Mr. Dicken testified in the ejectment suit, on behalf of the plaintiff, substantially as is above set forth, and the plaintiff recovered final judgment, and possession of the principal part of the property in controversy.

Mrs. Perry and Miss Emma M. Perry flatly denied that they or either of them had retained Mr. Dicken as their attorney, or had offered or agreed to give him a contingent fee of $5,000, as testified to by him. They admitted having consulted with him on the subject of the litigation, and testified that he said that it would not do to talk about fees, as he would be the principal witness in the case, and that he would, as a friend of the late John F. Perry, do what he could in their interest without compensation. Mrs. Perry admitted that he acted for her in other matters, the management of property in Pittsburgh, and collection of rents, etc., for which she paid him liberally.

The defendant presented, inter alia, the following points:

1. If the jury find from the evidence that the question in the case of Perry v. Perry, was whether the deed made by J. F. Perry to Hugh Perry, was an absolute deed or mortgage, and that Dicken was the only witness on the part of the plaintiff to prove that it was a mortgage, although they may find that there was other testimony to confirm him, then his alleged contract with Emma M. Perry, just before the trial, that he should be paid by her a fee of $5,000 for his services in the preparation and trial of the cause, if successful, or nothing if he was not, was illegal, and no recovery can be had in this suit therefor.

2. If the jury find from the evidence that Dicken was the main witness in the case of Perry v. Perry, any contract made by him with Emma M. Perry, for a contingent fee for his services, dependent upon the result of the case, was illegal, and no recovery can be had thereon in this case.

3. It being a fact proved in this case that Dicken was the main witness in the cause of Perry v. Perry, he could not

[*Perry v.* Dicken.]

make a contract for a contigent fee for his services in that cause which can be enforced in this case.

*Answer.*—As I have already answered the points of the defendant in my general charge, there is no necessity for repeating them, and I decline to affirm them.

The portion of the charge referred to in the foregoing answer was as follows:

" I am asked by defendant's counsel to charge you that such contracts made by such a person are illegal because immoral and contrary to the sound policy, and therefore utterly void. In a word, if it be true that Mr. Dicken agreed for a contingent fee to conduct a case in which he was the chief witness, undoubtedly, the fact that the fee was contingent, and that unless the cause was won he received nothing for his services, makes such a contract null and void. In order to place myself squarely upon the record for whatever it may be worth hereafter, and that there may be no mistake in my views, I answer this proposition as follows: I decline so to charge the jury. And I may briefly state, as well now as at any other time, my reasons for so doing. Whatever may have been decided elsewhere, the Supreme Court of our State, to whom I owe allegiance, and whose final decrees I always endeavor to carry out, be they what they may, has decided substantially that a contingent fee payable to a lawyer is not in itself illegal. That is the *first* reason why I decline so to charge.

" *Secondly.*—I have a most important reason to assign for my present ruling in this case, which differs from any I have heard before in this city, and from any—I think I am strictly accurate in the remark—which has ever been decided in this State. Here the lawyer, who was to obtain the contingent fee, was the chief witness in that cause, and perhaps the all-important witness in that cause. There was a time, when I should have taken a different view of this question. There was a time, and that not very long ago, when, under the rule of the old English common law, the slightest interest which a man had in a cause excluded him from being a witness in a case. So jealous was the law in that respect that even a slight liability for a mere fraction of the costs in a case would exclude the most important witness living. Now, except in excepted cases when the old rule of law yet shuts a man's mouth, any man may be a witness in his own case. If, then, the policy of the law of Pennsylvania has been so changed that a man may swear his own claim, no matter how much it may be, through the court, provided the other side is living and able to answer him, I see no moral reason why a lawyer may not sustain a case by his testimony, although he is a professional gentleman engaged in the cause. I can well imagine a case where the exigencies of

the situation would imperatively demand his being a witness in order to defeat a failure of justice. But, while I say all this, I desire to guard my remarks, as far as I am able, by adding a word or two to what has already been said. Wherever a gentleman appears in a case, and is obliged to take the stand from necessity, or whether there exists a necessity or not, the jury should scan the testimony with the most piercing penetration. They should look at all the surroundings of the case, and they should test the value of that witness's testimony by the highest standard known to an intelligent man. There is no law in Pennsylvania which compels an attorney, the moment he testifies, to disappear from the case as an attorney; but that is our practice, and the most proper one. While I decline to say that these contracts, if you believe they exist at all,—a question to which I shall presently refer,—are null and void, I request, nay, I demand, so far as it is proper for me so to do, that you shall scan them with the greatest possible care."

Verdict for plaintiff, for $8,410.46. After the hearing of a rule for a new trial the court ordered that upon the filing of a remittitur for all over $6,000, the rule be discharged, otherwise that it be made absolute. A remittitur was accordingly filed, whereupon judgment for $6,000 was entered for the plaintiff. The defendant thereupon took this writ of error, assigning for error the refusal of the court to affirm her points as above quoted.

*George Junkin* (*Edward Shippen* with him), for the plaintiff in error.—This case involves the purity of the administration of justice, and the relations between attorneys, as officers of the court, and their clients. In England this suit for a contingent fee could not be maintained. But in this state the practice has, with questionable propriety, been recognized. One of its baneful effects is that the attorney becomes a speculative partner with the plaintiff, as well as an advocate, and the temptation to overreach his own client tends to create a personal and adverse interest incompatible with the relation which should exist between attorney and client. The best writers upon professional ethics have condemned the practice and warned against its baleful influence. Sharswood's Legal Ethics, 102; Ormerod v. Dearman, 4 Out., 561; Dawkins v. Gill, 10 Ala., 206; Grove v. McCalla, 9 Harris, 44; Clippinger v. Hepbaugh, 5 W. & S., 315; Filson v. Himes, 5 Barr., 452. But this case is far worse than one of a mere contingent fee. Under color of a contingent fee, it was a contingent reward for testifying as the sole essential witness in the cause. Such contracts tend to conspiracy and perjury. No liberality of decision can so override the policy of the law as to validate

such a bargain, made by an attorney with a young woman lately a minor, on the eve of a trial. It would make no difference that there was no corrupt motive, the principle being that any contract whose tendency, directly or indirectly, is to affect the proper administration of justice, is void and against public policy. Smith on Contracts, 141; Wharton on Contracts, § 415; Grove *v.* McCalla, 9 Harris, 44. It was not disclosed on the trial of the ejectment that he was to receive a fee as attorney, which was contingent upon his swearing the case through as a witness. The temptation to falsify was intense, and this fact should have been disclosed so that it might affect his credibility. The courts will not lend their aid to enforce such a bargain. The Act of 1869 does not remove the disqualification of immorality inherent in such a contract as this, which was in effect a bribe to bias his testimony in his own favor as well as in favor of his client. It is in vain to attempt to separate the man as witness and as attorney; this appears from his own statement of the defendant's offer : "If you are successful we will even do better by you; *the case is in your hands and we depend upon you* "—evidently referring to his testimony as witness, and not his services as attorney

*Francis E. Brewster* ( *W. D. Moore* with him), for the defendant in error.—Under the decisions in Pennsylvania, a contract between attorney and client for a contingent fee is as valid as an agreement for the necessaries of life, is enforceable to the same extent and in the same way : Strohecker *v.* Hoffman, 7 Harris, 227; County of Chester *v.* Barber, 1 Out., 463. The rule is in no way changed because the attorney knows that it will be necessary for him to testify as a witness. His interest is of the same character as that of a party, and, under the Act of 1869, no interest disqualifies a witness.

Mr. Justice CLARK delivered the opinion of the court, February 4th, 1884.

This action of assumpsit was brought by J. Charles Dicken, Esq., in part, to recover from Emma M. Perry his fees for professional services, rendered in an action of ejectment brought by her against Hugh Perry, and tried in the year 1874, in the District Court of Allegheny County. The question involved in the ejectment was, whether or not a certain deed, made in the year 1863, by John F. Perry (father of Emma M. Perry) now deceased, to Hugh Perry, for valuable real property on DuQuesne Way, in the city of Pittsburgh, was intended by the parties thereto simply as a security for money, and therefore a mortgage, or whether it was what it purported to be, an absolute deed for the premises therein,

described. The claim of the plaintiff here, so far as it is for professional services, is founded upon an alleged express agreement for a fee of $5,000, contingent upon the success of his client in recovering the disputed property.

That an attorney may agree with his client to render services for a contingent fee, is now well settled in Pennsylvania; the learned counsel who argued the cause concede that the decisions of this court recognize the right of the members of the profession so to contract. Miles *v.* O'Hara, 1 S. & R., 32; Boulden *v.* Hebel. 17 S. & R., 312; Strohecker *v.* Hoffman, 7 Harris, 227; Dickerson *v.* Pyle, 4 Phila., 259; and Chester Co. *v.* Barber, 1 Out., 463, are all to this effect.

It is doubtless true that such a practice may sometimes lead to speculative litigation, or result in oppression, from an unconscionable bargain; and, so far as its tendency is to the perpetration of these abuses, it does not tend to promote the highest standard of professional ethics. Yet it is certainly true, as stated by Judge LEWIS in his Abridgement of the Criminal Law, that " Many of the most eminent and upright gentlemen of the bar have felt no repugnance to this method of compensation; it has been practiced without the slightest censure by gentlemen who have risen to the highest legislative and judicial stations in the Commonwealth, and who have been distinguished ornaments of the profession." As those, who have rights but no means to pursue them, are obliged to resort to this means of procuring legal redress, it becomes the duty of the courts, as we have already held, to see that no improper advantage is taken either of the ignorance or necessities of those who enter into such contracts. If, then, the agreement between Emma M. Perry and J. Charles Dicken was for his professional services as an attorney, the mere fact that his only hope of reward depended upon his success would not defeat its provisions or prevent his recovery of the sum stipulated. That the plaintiff's services were rendered in the line of his profession as an attorney, and not otherwise, is established by the verdict; the learned judge of the court below in his general charge, instructed the jury that if the plaintiff "failed to satisfy them by sufficient evidence, either of his employment as attorney, or of the existence of a contract made with him as such," they should find for the defendant.

But it is said that Dicken not only participated in the trial as an attorney, but he was the principal witness in behalf of his client; that he was therefore interested in the result, and, as the amount of his interest was fixed only a short time before the trial, that it was against the policy of the law, and in derogation to his high privilege as a member of the bar that

[Perry *v.* Dicken.]

he should be thus called to testify. If it appeared that the contingent fee was a reward for his services as a witness, this contention would certainly be sustained; such a contract would be not only reprehensible but highly immoral, against public policy, and, therefore, illegal and void. There is nothing in the evidence to indicate that there was any corrupt intention to influence the testimony of the witness; it was known from the commencement of the proceedings in ejectment that Dicken's testimony would be required; he was the only person present at the execution of the deed, and who knew the true nature and character of the transaction with the intent of the parties thereto. His testimony, however, became more important and essential by reason of the death of a witness a few days before the trial. It is immaterial here whether the amount of his compensation was only determined a short time before the trial, or at an earlier date, if the fee was for professional services, and that was a question solely for the jury; Dicken testifies however, that the amount had been fixed before the ejectment was brought, and that he thought he had been secured to the amount of $5,000 in the contract with Weir & Gibson, who were associated with him in the case.

Since the Act of 1869 no interest or policy of law, except as provided in that Act, will exclude a witness from the stand; the law of evidence, as it had been previously understood, affecting the admissibility of witnesses, was by that Act revolutionized, the former policy of the law was abandoned and a new one adopted. If no interest or policy of law will exclude even the parties from testifying, upon what principle can we hold that it is immoral and tends to perjury to admit the attorney to testify? We are ignorant of the fact that there is anything in the nature of the profession, or in its tendencies, which will justify any such imputation. If the interest of the attorney is disclosed, as it was in this case, it affects his credibility and his testimony becomes a proper subject of discussion to the jury on that ground.

We do not hesitate to say that an attorney who has a just sense of propriety, will, so far as is consistent with his duty, decline to testify in behalf of his client, as the question of his own credibility and of the accuracy of his statements afford for him most indelicate questions for discussion. Absolute necessity may however in some cases disclose a duty which an attorney cannot disregard. Aside from this, if called as a witness, he is bound to testify, and certainly it cannot be against public policy for a member of the bar to do voluntarily that which by the law he is obliged to do.

We are disposed to adopt the language of WOODWARD, J.,

[Webb v. Hitchins.]

in Strohecker *v.* Hoffman, 7 Harris, 227, where he says : "Agreements fairly made between counsel and clients, are as obligatory as between other parties; and when a desperate claim has been successfully asserted by counsel on the faith of an agreement that one-half of the recovery shall reward his skill and diligence, it is an ungracious plea to urge that the agreement was without consideration and void."

If all that is assumed in the defendant's points were true, we can discover no principle or policy of the law which would render the alleged contract illegal, and there certainly was no error in the refusal of these points, when that refusal was accompanied by clear and explicit instructions that the plaintiff must show that the fee of $5,000 was for services to be rendered as an attorney, and not as a witness in the ejectment. We discover no error in the ruling of this case, and the

Judgment is affirmed.

PAXSON, TRUNKEY and STERRETT, JJ., dissented.