Howard P. Foley Co. *v.* Barnett et al., Appellants.

Argued January 27, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*Joseph R. Dickinson,* for appellants.—Appellee, in dealing with Lynch (by whatever name called, whether agent, supervisor, or efficiency man), was bound to ascertain the extent of his authority and to prove that his acts were within the scope of such authority: Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396; Mahoning V. B. Co. v. R. R., 83 Pa. Superior Ct. 379; Loomis v. Silk Throwing Co., 96 Pa. Superior Ct. 69; Inters. Sec. Co. v. Bank, 231 Pa. 422; Long v. Coal & Nav. Co., 292 Pa. 164; Singer Mfg. Co. v. Christian, 211 Pa. 534; Stokes v. Dewees, 24 Pa. Superior Ct. 471.

The minute and contract create no authority in Lynch to order work and material, but limit him to a supervision of the work Schlegel was authorized to do: Vulcanite Paving Co. v. Phila., 239 Pa. 524; Knickerbocker Trust Co. v. Ryan, 227 Pa. 245; Smith v. Hickman, 14 Pa. Superior Ct. 46; Gillison v. Wanamaker, 140 Pa. 358.

*Cyrus G. Derr,* with him *Charles A. Wolff,* for appellee.—Mr. Lynch, under the testimony, must be regarded as an agent of the Moose Lodge, clothed with authority to order the work and materials in this suit claimed by appellee and to bind the Moose Lodge, appellant, therefor: Park v. Ry., 58 Pa. Superior Ct. 419.

OPINION BY MR. CHIEF JUSTICE FRAZER, March 16, 1931:

This proceeding was begun by bill in equity to recover from the Moose Lodge of the City of Reading the value of work and material furnished by plaintiff electrical company in the completion of the theater portion of defendants' lodge building; and resulted in a decree in favor of plaintiff, from which defendants have appealed. Briefly stated the facts are as follows: Appellant lodge having secured the Interstate Residences, Inc., as a prospective tenant, determined to complete the theater part of its lodge building. On March 16, 1926, the association, by formal resolution, and at the suggestion of the prospective tenant, constituted Joseph F. Lynch as its "efficiency man" to act as "supervisor of construction" in completing the theater. By written agreement of June 3, 1926, with Charles H. Schlegel, defendant lodge employed and designated the latter as its "supervising contractor," to act as its "agent ......to supervise, manage and control" the work on the theater. The Interstate Residences, Inc., entered into a lease with defendant and the lodge began the work of completing its unfinished theater. By written agreement, Schlegel employed plaintiff company, on June 16, 1926, to install electrical work indicated and also that specified by the architect, for the sum of $7,-540. The work embraced in this contract was performed by plaintiff and paid for by defendant. Plaintiff performed considerable additional work of the character above indicated, 39 items, for which the present claim is made. The evidence shows that defendant paid 13 items

of this claim, 12 of which were ordered by Schlegel, and one by Lynch, but refuses to pay for the remaining 26 ordered by Lynch. Payment made for the 13 items aggregated $652.38, and it is conceded that they drop out of the present claim. The decree for $8,187.20 and interest represents the total amount claimed for the 26 items ordered on behalf of the lodge by Lynch. There is no question but that the work for which claim is made was satisfactorily done and that the price charged is reasonable.

Defendant resists plaintiff company's claim for these 26 items, alleging the lease it entered into with the Interstate Residences, Inc., which lease provided that the theater building should be completed and fully equipped by lessor, was modified by an agreement entered into by lessee and lessor some four months later, providing that instead of lessor furnishing all equipment, lessee should "furnish the equipment to the theater building to include organ, projection machines, chairs, carpets, draperies, state equipment, electrical equipments to the theater." This modifying agreement reduced lessee's rent and contained other provisions we need not recite. In other words, defendant says that inasmuch as this subsequent agreement turned over equipping of the theater to lessee, plaintiff should present its bill to that corporation. Without construing that agreement, it will suffice to say of it that as it was not made known to plaintiff, and as plaintiff was not a party to it, it had no effect in relieving defendant of its financial obligations to plaintiff.

Plaintiff rests its claim upon the fact that Schlegel and Lynch, through whom it dealt with the Moose Lodge, were its duly constituted agents whose orders and contracts bound the lodge. Schlegel who originally employed plaintiff had been empowered to sublet any portion of the work and make contracts therefor as defendants' agent under the name of "supervising contractor"; this fact, found by the court, is amply supported by evi-

dence. The terms of this contract are so plainly inconsistent with defendant's argument that Schlegel was an independent contractor, that we affirm the finding that he was engaged as an agent to act for defendant, and omit further discussion of the point.

The next question is: Did Lynch have authority to order from plaintiff services and materials on behalf of defendant lodge? If so, his ordering of the 26 items bound defendant to pay for them, and any question of liability of the Interstate Residences, Inc., to plaintiff, need not be considered.

The court found Lynch was defendant's general agent, with such implied powers that the work and materials ordered by him, here in suit, must be regarded as having been furnished at defendant's request. The evidence supports this finding, as proofs show Lynch to have been appointed under a lodge minute constituting him its "efficiency man" to act "as supervisor of construction and finishing of the theater portion of our building," and, in discharging this duty, he was held out by defendants as having authority to place orders and direct work as a general agent. Lynch, together with Schlegel's agents, "was on the ground directing the progress of the work over a period of seven months." Lynch together with Schlegel, started plaintiff on the additional electrical work by express orders, pursuant to authorization and holding out as defendant's general agents for construction. Throughout completion of the building, which was being rushed, the proofs show that Lynch "possessed a high and controlling power, discretion and responsibility." In their contract with Schlegel, Lynch's approval and direction was a condition precedent to the securing of special services and paying money for work done. Furthermore, defendant actually paid one of the disputed items, a feeder for a sign, ordered from plaintiff by Lynch. Seventeen of the unpaid items also ordered by Lynch were for pre-

cisely the same work and materials,—feeders for signs, —consequently defendant's refusal to pay for them is wholly in disagreement with the payment made. The testimony adduced by plaintiff shows conclusively that the practice and general method of dealing during the construction work placed Lynch in the apparent position of an authorized agent to order, on behalf of defendant, the services and materials sued for.

In conclusion we call attention to our rule that where the chancellor's findings are affirmed by the court in banc, and upon appeal such findings appear to be supported by proof sufficient to require their submission to a jury in a trial at law, as is the case here, we will not disturb these findings: Belmont Laboratories, Inc., v. Heist, 300 Pa. 542, 546.

The decree of the court below is affirmed at appellants' costs.