## Leiser et al., Executors, et al., Appellants, *v.* Hartel.

Argued May 24, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Mortimer C. Rhone,* with him *Cummings & Gubin, John E. Cupp* and *James F. McClure,* for appellant.

*Russell S. Machmer,* of *Schaffer & Machmer* and *Clair Groover,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 30, 1934:

The facts in connection with this appeal present a rather startling situation. Jane C. Harrison, a niece of the late Senator Simon Cameron, for many years a senator from Pennsylvania and secretary of war under President Lincoln, lived in Lewisburg, Pennsylvania. She was possessed of considerable property which included land formerly used as a brickyard and three other pieces of real estate, known respectively as "The Harrison Block," "The Mansion," and "The Cameron House." She died in 1932, well advanced in age, and by her will disposed of her property, including this real estate, to the Presbyterian Hospital of Philadelphia as residuary legatee.

Three days after her death, Oscar R. Hartel, a former son-in-law, whose wife had died in 1907, filed with the recorder of deeds two deeds from Mrs. Harrison to him-

self. The first was dated 1909, and the second, 1924. They conveyed to him in fee this real estate mentioned above. The executors and residuary legatee, evidently feeling that there was something irregular about the deeds, brought a bill to remove a cloud on the title, apparently transferred by the will to them, by cancelling the deeds, and also praying for other appropriate relief. The court below dismissed the bill; the hospital and executors appeal.

The validity of these transfers hinges upon the delivery and possession of these deeds. There is no dispute as to their execution.

The court below was largely influenced by what we said in Cragin's Est., 274 Pa. 1. It is undoubtedly correct that when a deed is acknowledged before a proper officer as being signed, sealed and delivered, and the manual possession of the grantee is established, a presumption arises that an absolute and unconditional delivery is intended, unless by act, expression or writing an indication is made of an intention to qualify the formal act. We said quite recently that there could be no delivery in escrow to a grantee: Eaton v. New York Life Ins. Co., 315 Pa. 68. If the facts contained in this record were controlled by the principles laid down in Cragin's Est., supra, we would not depart therefrom in the slightest particular, but they are not.

We said in Cragin's Estate that a proper acknowledgment, with the physical possession of the deed by the grantee, did not conclusively establish an intention to deliver; that the prima facie case, or the presumption arising from recording, or signing, sealing and acknowledging a deed as delivered, accompanied by manual possession by the grantee, is not irrebutable. Such presumption can be overcome by evidence that no delivery was in fact intended and none was made. That conclusion was based on our prior authorities: Devall v. Glover, 250 Pa. 417. In Cable v. Cable, 146 Pa. 451, we said that while manual possession of a properly executed

and acknowledged deed, *"in the absence of suspicious circumstances,"* constitutes "prima facie evidence of delivery," it is, when unaccompanied by direct testimony of a delivery and when surrounded by circumstances raising impressive inferences contrary to every attribute of a conveyance of the property, insufficient to establish an effective delivery: Stewart v. Stewart, 50 Wis. 445, 7 N. W. 369. See Greenleaf on Evidence, volume 2, section 297. Long possession by the grantor, and acts evidencing ownership meanwhile, without recognition of another's rights or of a claim of ownership by a grantee, are sufficient to repel the presumption of delivery arising from a deed alone: Knolls v. Barnhart, 71 N. Y. 474, 478.

Before discussing the testimony of the sole and only witness to the act of delivery, we will state some facts in connection with all this land that occurred in testator's lifetime which were utterly inconsistent with any conveyances of the property. The first deed was executed and left unrecorded for 23 years and the second for 8 years before Mrs. Harrison's death. It was proved that the first deed was in the possession of Mrs. Harrison and in her vault 15 years after its execution. While no mention is made of the whereabouts of the second deed, Hartel was supposed to have taken it with him to Boston. During all these years, so far as the record is concerned, this property was in the name of Mrs. Harrison, as owner. Throughout all this time and until her death she exercised sole and absolute control over all the properties. She rented them and collected the rents; she made repairs to the properties and deducted the cost of these repairs in preparing her income tax returns. She also deducted depreciation on account of the properties, an inconceivable act if she did not own them. She paid the taxes until the time of her death. When the State of Pennsylvania constructed a highway through one of the properties, she claimed the damages from the county and settled therefor with the commissioners, executing a release, in effect a transfer, dated March 13, 1931, where-

in she stated that she was the owner of the property. This release was recorded in the proper office. Hartel owned property close by, which this same highway traversed. He made no claim for any damages to the Harrison land, but did claim damages for his own and executed a similar release which was recorded in the same place where Mrs. Harrison's release was recorded. Mrs. Harrison accounted to the federal government in her tax return for the rents and revenues from these properties. Long after the execution of the first deed, she directed that all the buildings of the brickyard property be torn down, sold and removed from the premises at a price determined by herself. No part of this money was ever turned over to or claimed by Hartel. Mrs. Harrison placed signs on the brickyard property advertising it for sale, and had, up to a short time before her death, a similar sign on the Cameron House property in the town. She took out insurance thereon in her own name. In her will she treated these properties as though she owned them. By her fourth codicil, dated in 1930, 6 years after the second deed, she directed that two old, family servants be permitted to occupy a house, located on the Cameron property, "so long as both or either of them may live." Her will, executed in 1928, provided: "It is my will that he [Oscar R. Hartel] shall have and take no interest whatsoever in my estate or any part thereof, and that he shall receive nothing from me or my estate." *

---

* In Duvall v. Glover, 250 Pa. 417, a deed dated March, 1884, was unrecorded. Another deed, without consideration, was executed and recorded in 1892. The grantor in the deeds died in 1909. The evidence against the presumption of the delivery of the deed to the grantee plaintiff in 1884, which was in his possession, were certain acts with reference to the conduct of the grantor in the first deed subsequent to delivery. In an action of ejectment the finding of the jury against the delivery of the deed to the first grantee was sustained in an opinion by this court.

We are confronted with this situation: The two deeds in the manual possession of Hartel. The 1909 deed was still in the possession of Mrs. Harrison in 1924. The usual presumption attendant on the words "signed, sealed, acknowledged and delivered" loses much, if not all, of its force where the grantor holds possession of the deeds for a long period of time. Following the language of Justice MITCHELL in Cable v. Cable, supra, the circumstances related above attendant upon the acts and conduct of the parties since the execution and delivery of both deeds, were sufficient in and of themselves to overcome any presumption arising from manual possession.

No witness saw the 1909 deed delivered. We are relegated then to the testimony of a single witness to sustain the fact of delivery of the 1924 deed and the manual possession of both deeds. This witness is a brother-in-law of appellee. He lives in Sunbury, some distance from Lewisburg. He says that in September, 1924, he drove to Lewisburg to get Hartel and they stopped by Mrs. Harrison's house. Hartel went into the house, came back, got into the automobile, and on the return to Sunbury from Lewisburg told him that he had obtained the 1909 deed. Whether Hartel saw Mrs. Harrison that day, or whether she gave him the deed, does not appear. No explanation is given as to how he came to get possession of it; he just had it. There is no evidence that Mrs. Harrison was in the house while Hartel was there. This deed was held by him 8 years before it was recorded [23 years after execution]. As stated, he never asserted any ownership over the property. Mrs. Harrison dismantled and sold the building and equipment, erected a large "For Sale" sign on the land, gave her name as the owner, and the county took from her, as owner, a part of the land.

As to the second or 1924 deed, the same witness says he drew it up. When asked where he got his information with which to prepare the deeds, he stated that it was

from the record. "I went there and looked it up. I think I looked at the old William Cameron deed for the purpose of getting my description. Q. You copied it out of the old William Cameron deed, the same as it was? A. Yes,...... Q. And found a description fitting this? A. Yes sir,......"

It was proved conclusively that there was no deed, conveyance, or other record that showed any such description as that contained in the deed from Mrs. Harrison to Hartel covering the "Mansion House," the "Cameron House" or the "Harrison Block." The contradictions are so plain, obvious and material between the Hartel deed and the record, that we must conclude that the witness must have been mistaken in his recollection. Not one of the three descriptions contained in this deed to Hartel could possibly have been taken from the record. There is no such record, and there was no such record when this deed was prepared.

This witness also contradicted himself when he mentioned the place where the instructions were given to him by Mrs. Harrison. In his cross-examination, instead of frankly disclosing all the facts regarding the matter, he was apparently reluctant and hesitant, setting up objections which only persons of his training could possess. In his testimony he said he represented Mrs. Harrison in connection with the making of the deed of 1924. When he was asked: "You were acting to have it deeded to your brother-in-law?" he replied, "I never look a gift-horse in the mouth." "Q. And neither you nor Hartel were looking at a gift-horse that day? A. No, sir. Q. Did you think it was a gift-horse? A. Yes, sir. Q. How did you know it? A. He didn't pay any money for it." He didn't advise his brother-in-law to have his deeds recorded. He knew perfectly well what it meant if they were not recorded. Mrs. Harrison could sell the property to another, convey, mortgage, or otherwise dispose of it.

It is clear to our mind that the delivery of the deeds cannot be sustained by the testimony of this witness. Appellee had another living witness, the notary who took the acknowledgment, whom he could have called to show delivery. Why she was not called is not disclosed by the record.

The situation is somewhat analagous to Leahey v. Leahey, 309 Pa. 347. In that case the grantee testified that the deed was delivered to him by his mother, the grantor, in her dining room. He afterwards handed it back to her for delivery to another grantee named in the deed. It was found in that case that the grantor, after the date of the deed, had exercised full and complete ownership over the property, had sold part of it, paid the taxes, insurance, leased the premises and collected the rent. In that case the witness who testified as to delivery was not credited, and the manual possession of the deed did not outweigh the circumstance opposed to the delivery. In the present case, Mrs. Harrison exercised full dominion over the properties until she died; offered one of them for sale by a sign placed on it by her, naming herself as owner; by her will she disposed of part of the property; while she lived, she improved and repaired it, claimed depreciation of it in her income tax return, paid the taxes, leased the property and collected the rents. These acts are incompatible with a grant of the properties by her to Hartel.

Under the circumstances we are compelled to reverse the decree of the court below, direct the reinstatement of the bill and the entering of a decree in accordance with the prayer thereof; costs to be paid by appellee.

DISSENTING OPINION BY MR. JUSTICE MAXEY, June 30, 1934:

I do not concur in the majority opinion in this case and I expressly dissent from it.

The chancellor found as a fact (5) that on December 27, 1924, Jane C. Harrison made, executed and delivered

a deed to Oscar R. Hartel, his heirs and assigns, to three described tracts of real estate (being one of the properties in controversy), and (6) Hartel accepted this deed and on November 19, 1932, he caused it to be duly recorded, and (7) Jane C. Harrison on February 6, 1909, conveyed to Hartel, his heirs and assigns, certain described real estate (being the other property in controversy), and (9) this deed was accepted by Hartel, September 7, 1924. These findings of fact are unchallenged. This court said in Allen v. Pennypacker, 302 Pa. 495, 153 A. 734: "Where the only assignment of error is to the final decree, the findings of fact supporting the decree are not challenged: Atlas Portland Cement Co. v. American Brick & Clay Co., 280 Pa. 449, 452 [124 A. 650]. The decree followed the findings and, as the legal position of the parties was determined in the first appeal, the decree as a matter of law was correct." This court also held in First Church of Christ, Scientist, v. Meredith, 266 Pa. 263, 110 A. 72, that an appeal based upon a single assignment of error to the decree of the court, will be dismissed where none of the facts found by the court below, fully justifying the decree, have been assigned as error.

The findings of the chancellor were affirmed by the court in banc. This court held in Foley Co. v. Barnett et al., 303 Pa. 218, 154 A. 391, in an opinion by the present Chief Justice, that where a chancellor's findings of fact are affirmed by the court in banc, and on appeal such findings appear to be supported by proof sufficient to require their submission to a jury, the appellate court will not disturb the findings. This court held in Garland v. Trout, 303 Pa. 545, 154 A. 926, that the appellate court will not reverse upon a question of fact if there is sufficient evidence to support the court's finding, especially if the decision is against the party having the burden of proof, and such proof depends upon the testimony of witnesses whom the trial judge saw and heard. This court said in Kratz v. Allentown, 304 Pa. 51, 155 A. 116,

in an opinion by Mr. Justice WALLING: "The chancellor found the controlling facts favorable to plaintiffs and, being supported by sufficient evidence, we are concluded thereby, as in other cases in equity." This court said in Brinton et al. v. Davidson, 308 Pa. 371, 162 A. 905, in an opinion by Mr. Justice LINN, as follows: "The facts found by the learned chancellor, and approved by the court in banc, are supported by evidence and must be accepted."

The findings of fact in this case are not only supported by the evidence but I can find in the record no evidence to support a contrary finding. The due execution of the two deeds in controversy is not questioned. No allegation of fraud or undue influence is made. J. Fred Schaffer, a reputable member of the bar, who was Mrs. Harrison's attorney, testified that the deed of December 27, 1924, was executed by his then client, Jane C. Harrison, and delivered by her to Hartel on the same date, and was accepted by him (the grantee). Schaffer and Katherine Crowl signed this deed as subscribing witnesses. The deed was, so Schaffer testified, then "handed to Mr. Hartel in the presence of Mrs. Harrison." He testified further as follows: "Mr. Hartel accepted it, and took it away that day because we left together and he had that deed. Q. Mr. Hartel had that deed when you left the house of Mrs. Harrison? A. Yes, sir. Absolutely so. Q. Did you see Kathryn M. Crowl sign that? A. I did. She signed in my presence, and I signed in her presence, as witnesses, and we both there certify that the deed was signed, sealed and delivered in our presence, as it was." That testimony stands uncontradicted. No attempt was made to contradict it. Miss Crowl was available as a witness if plaintiffs wished to attempt to contradict Mr. Schaffer, as she was then in the employ of plaintiffs counsel. Defendant was under no obligation to call her, as her signature on the deed as a witness and her signature and official notarial seal on the acknowledgment imported verity.

The only attack on Mr. Schaffer's credibility is on a minor matter, not on the delivery of the deed. It was charged by plaintiffs and the majority opinion supports the charge that Schaffer testified that he obtained the description of the properties "from the record" and that there was no record that showed any such description as that contained in the deeds from Mrs. Harrison to Hartel. Schaffer's testimony on this point was as follows: In re Tract No. 1. That he went to the records and "modified the description. ...... I wouldn't make a deed for more than she owned. ...... I certainly would exclude anything she had conveyed away. I made the description to agree with the description on the ground, in conjunction with what I found on the record." In re Tract No. 2, this witness was asked these questions and made these answers: "Q. Did you find any such description in any deed to William Cameron as you recited in Tract No. 2, in this deed of December 27, 1924? A. Yes, sir. Q. As you recited it in there? A. Not as it is in there precisely. ...... Q. You testified you got the description you put in this deed from the record? A. The record, plus the facts on the ground, and the fact that there was a deed out, I think, a deed out of William Cameron for part of that property sold to Reber. I think so." In reading this witness's testimony it is obvious that he is giving in 1933 his best recollection of something that took place in 1924 and that his recollection is that he took the old record descriptions of the properties as a basis of his description used in the 1924 deed and modernized the description. This is not an unusual practice and I fail to see how this collateral matter affects in the slightest degree the witness's uncontradicted testimony as to the *delivery* of the deed.

There was no impropriety in Mr. Schaffer's testifying in this case. Mrs. Harrison being dead, the defendant, Hartel, became incompetent to testify, under section 5 of the Act of May 23, 1887, P. L. 158. It was Mr. Schaffer's duty to testify if called upon to do so. This court

said in Perry v. Dicken, 105 Pa. 83, 90: "If no interest or policy of law will exclude even the parties from testifying, upon what principle can we hold that it is immoral and tends to perjury to admit the attorney to testify? We are ignorant of the fact that there is anything in the nature of the profession, or in its tendencies, which will justify any such imputation. ...... We do not hesitate to say that an attorney who has a just sense of propriety, will, so far as is consistent with his duty, decline to testify in behalf of his client, as the question of his own credibility and of the accuracy of his statements afford for him most indelicate questions for discussion. Absolute necessity may however in some cases disclose a duty which an attorney cannot disregard. Aside from this, if called as a witness, he is bound to testify, and certainly it cannot be against public policy for a member of the bar to do voluntarily that which by the law he is obliged to do."

As to the deed of February 6, 1909, Mary Bennett, a witness for the defendant, testified that she as stenographer in the law office of W. R. Follmer, Esq., drew it. She also testified that Mrs. Harrison said, "if Hartel came back and treated her nice, she would give the deed to him." This deed remained in the office of Attorney Follmer until April 3d or 4th, 1921, when it was turned over to Mrs. Harrison. This witness further testified that in 1923 she at Mrs. Harrison's request wrote to Hartel, asking him to come back from Boston to see Mrs. Harrison. In his reply, Hartel addressed Mrs. Harrison as "Dear mother." "That pleased her," said the witness. Thereafter Hartel made a number of visits to Mrs. Harrison's home.

As to the delivery of the 1909 deed, Mr. Schaffer testified as follows: "The first I saw this deed was on the afternoon of the seventh day of September, 1924, which was a Sunday. That afternoon I drove to Lewisburg, myself, my wife, and my daughter, the oldest one, and we drove up in front of the Harrison home. Our going

there was for the purpose of getting Mr. Hartel and asking him to Sunbury, where he expected to catch the Buffalo train to Boston. We came up there. I rang the bell, and Mr. Hartel came out. I did not enter the house, nor did my wife or daughter. Mr. Hartel came out and entered the car and we drove to Sunbury together, and he left that afternoon for Boston, and he had this identical deed for the brickyard in his possession. Q. Did you see that deed? A. I did." Here there is uncontradicted testimony that Hartel had in his possession in September, 1924, this 1909 deed to the so-called brickyard property. His possession of it was presumably lawful. There is no charge or intimation that he stole it. There is nothing anywhere in the record indicating that Hartel was a dishonorable man. He had married Mrs. Harrison's daughter, who subsequently died, and, long after her daughter's death, Mrs. Harrison received Hartel in her home and seemed pleased to be addressed by him as "dear mother." The chancellor who heard the witnesses and who presumably is in a position to know their character and standing in the community found from the evidence as facts (7) that Mrs. Harrison executed the 1909 deed in question, and (8) that it was delivered to Hartel, the defendant on September 7, 1924, and (9) that he accepted it, and (10) that it was recorded February 6, 1909.

In the face of these unchallenged findings of fact, the majority of this court infers from the facts that the deeds remained so long unrecorded and that Mrs. Harrison exercised complete dominion over the properties described in the deeds and in her will treated the properties as her own, that she never delivered these two deeds to Hartel. There is nothing so unusual about leaving a deed unrecorded or in a grantor continuing to exercise dominion over the property she or he has conveyed in a delivered but unrecorded deed to a near relative, as to give to such circumstances much probative value on the question of the deed's delivery, certainly not enough

probative value to overcome the uncontradicted testimony in this case of a reputable witness that the deed of 1924 was in fact delivered to the grantee and the 1909 deed was in the grantee's possession during the grantor's lifetime. As to the fact that Mrs. Harrison in her will treated the properties so deeded to Hartel as though they were still hers, this is to be said: Defendant's title to these properties cannot be legally affected by anything Mrs. Harrison said in her will. This court held in Baldwin v. Stier, 191 Pa. 432, 43 A. 326, that a grantor's declarations made after he had parted with his title cannot defeat the title of the grantee. In Kern v. Howell, 180 Pa. 315, 36 A. 872, this court held (quoting syllibi 1 and 2) : "The signing, attestation and acknowledgment of a deed by the grantor and the recording of it raise a presumption of delivery which even declarations of the grantor that the deed was not delivered will not overcome. The possession of real estate by a vendor after the execution and delivery of a deed therefore is in trust for the vendee, and the statute of limitations will not begin to run until the vendor asserts an adverse holding by some unequivocal act brought to the knowledge of the vendee. This well established rule applies with special force to transactions between father and son." The fact that Mrs. Harrison paid the taxes on the properties is evidence only to prove possession and is not evidence to prove title. See Green v. Schrack, 16 Pa. Superior Ct. 26, and Irwin v. Patchen, 164 Pa. 51, 30 A. 436.

In Cable v. Cable, 146 Pa. 451, 23 A. 223, cited in the majority opinion, this court said, in an opinion by Mr. Justice MITCHELL: "The deed takes effect from delivery, and possession by the grantee is, in the absence of suspicious circumstances, prima facie evidence of delivery: 2 Greenleaf, Evidence, section 297. The plaintiff, therefore, had made out a prima facie title sufficient to go to the jury." The case now before us went to the chancellor, in lieu of a jury, and he found on uncontradicted testimony, that the deeds should stand as having been

duly delivered, for plaintiff failed to produce the proofs required for a decree of cancellation of them. In so deciding, the learned chancellor followed the decision and opinion of this court in Cragin's Est., 274 Pa. 1, 117 A. 445, where Mr. Justice KEPHART speaking for the court said: "The general principle of law is that the formal act of signing, sealing and delivering is the consummation of the deed, and it lies with the grantor to prove clearly that appearances are not consistent with truth. The presumption stands against him, and the burden is on him to destroy it by clear and positive proof that there was no delivery and that it was so understood at the time: Earnest's App., 106 Pa. 310, 318.. Where we have, as here, a deed, absolute and complete in itself, attacked as being in fact otherwise intended (to take effect after death), there is a further presumption that the title is in conformity with the deed, and it should not be dislodged except by clear, precise, convincing and satisfactory evidence to the contrary. It is not enough that it may satisfy a jury, if the question were to be submitted to it, but it must also satisfy the mind and conscience of the court as a chancellor, sitting and reviewing the testimony. If the evidence fails to satisfy in this respect, the instrument should be unhesitatingly upheld. Title to land ought not to be exposed to the peril of successful attack except where the right is clear and undoubted."

Certainly the right of these plaintiffs to have the deeds in question surrendered and cancelled is not "clear and undoubted." On the contrary, as the chancellor said in his 15th conclusion of law: "The plaintiffs offered no competent evidence contradicting or tending to contradict the defendant's evidence of delivery and acceptance of the deeds."

I would affirm the decree of the court below.