Chambley et al., Appellants, *v.* Rumbaugh et al.

Argued April 21, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Fred B. Trescher,* of *Kunkle, Walthour & Trescher,* for appellants.

*Robert W. Smith,* of *Smith, Best & Horn,* for appellees.

OPINION BY BALDRIGE, J., July 15, 1938:

These seven appeals, which were argued together and will be disposed of in one opinion, are from a decree of the court below dismissing plaintiffs' bill in equity praying for the cancellation of certain deeds. There is no doubt as to the execution of the deeds. Their validity depends upon delivery. The chancellor found, upon sufficient evidence, certain facts, which were affirmed by the court in banc and may be stated, in substance, as follows:

Flora J. Rumbaugh was the owner of two parcels of ground situate in the borough of Mt. Pleasant, Westmoreland County, one fronting 64-1/2 feet on Main Street, conveyed to her by deed of Edna S. Mullin et al., dated December 16, 1927, and the other fronting 28 feet on the same street, conveyed to her by deed of James Gregg, dated February 1, 1888. Both parcels extend back an even width 135 feet to an alley. On the

first is erected a brick office building and dwelling combined, and on the second a frame store and apartment building.

Flora J. Rumbaugh (nee Duncan) married Daniel C. Rumbaugh in 1904. He died in February, 1928, leaving to survive him his widow and two sons by a former marriage, Lloyd F. Rumbaugh and Morris F. Rumbaugh, two of the defendants in this suit. In the distribution of the estate of the decedent, the surviving widow received as her share $17,287.33.

On April 1, 1932, Mrs. Rumbaugh visited the office of Wade T. Kline, Esq., a Greensburg attorney, and directed him to prepare two deeds, one conveying 60 feet of the Main Street property to Lloyd F. and Morris F. Rumbaugh, and the remaining 31-1/2 feet, more or less, to her sister, Sarah E. Rhoades. The deeds were signed, acknowledged, and given to the grantor. Mr. Kline instructed her "to deliver them or to place them in the hands of some third person for delivery to the grantees at the time of her death." He prepared, also, a third deed, which she signed and acknowledged, conveying her interest in certain vacant lots in the Duncan Plot which was located either in or near Mt. Pleasant. This deed was not found after Mrs. Rumbaugh's death, nor was the name of the grantee therein disclosed by the testimony.

On January 9, 1933, Mrs. Rumbaugh returned to her attorney's office and had him write her will, wherein she gave and bequeathed to her brother, Robert G. Duncan, the sum of $7,000, in trust, and directed at his death that sum to be divided equally among his children, the plaintiffs herein. She also gave and bequeathed to her stepsons, Lloyd F. and Morris F. Rumbaugh, and to her sister, Sarah E. Rhoades, each the sum of $1. She directed that her executors convert her stocks, bonds, and mortgages into cash, and, after payment of the bequests, the remainder of her estate "to

be divided equally, share and share alike among my Brothers and Sisters, or their heirs." She appointed Lloyd F. Rumbaugh and Edith Rhoades, a daughter of her sister, executors. No mention was made in the will, nor does it appear that the testatrix died seized, of any real estate other than the two parcels above mentioned.

Some time after the preparation of her will, Mrs. Rumbaugh returned to Kline's office and gave him custody of it. After her death, which occurred April 5, 1935, the will was duly admitted to probate, and letters testamentary were granted to the executors named therein. The only deed found in her safe deposit box or among her effects was an unrecorded one, dated —— day of February, 1928, purporting to convey to Flora Stairs an undivided interest in certain lots in the Duncan Plan.

The grantees had no knowledge of the existence of the deeds but Kline recalled their execution and a diligent search was made for them. It was not until May 17, 1936, the day after the death of Emma J. Bair, that they were discovered among her papers by Kline, who was her nephew. Miss Bair, 79 years of age at the time of her death, had been a school teacher and a resident of Greensburg for many years, and was personally known to Mrs. Rumbaugh and distantly related to Lloyd and Morris Rumbaugh. She had been in failing health the last two or three years of her life and had given little attention to her affairs. Upon obtaining possession of the deeds, Kline sent for Lloyd Rumbaugh and gave them to him. On May 27th he recorded the one wherein he and his brother were the grantees and delivered the other deed the following day to Edith Rhoades, who, in behalf of her mother, Sarah E. Rhoades, the grantee, promptly recorded it.

Flora J. Rumbaugh left to survive her a sister, Sarah E. Rhoades, one of the defendants, who resided in the borough of Mt. Pleasant, and the seven plaintiffs in this

suit, children of Robert G. Duncan, brother of the testatrix, who died March 6, 1935, none of whom have been residents of Westmoreland County since 1908. The learned court below aptly said: "It was quite natural she would want her sister to have her Mt. Pleasant real estate. This was where her sister resided—her brother at that time lived, and for many years had lived, elsewhere. Her residuary clause, in any reasonable construction, deals only with the remaining proceeds of the sale of her stocks, bonds, and other securities."

The property described in the several deeds involved herein continued to be assessed in the name of Flora J. Rumbaugh. She collected the rents and paid the taxes and insurance to the date of her death. Thereafter, the executors of her will, with the consent of the several heirs, managed the property. An account filed October 21, 1936, included all rentals received to October 1st of that year and claims credit for money expended for insurance, repairs and taxes on the property. That was, no doubt, due to the lack of knowledge that the deeds existed.

Each of the recorded deeds containing a declaration by the grantor that it was sealed and delivered by her was produced at the trial, thus admittedly establishing, prima facie, a right of possession and title in the defendants to the property described therein. It thereupon became the duty of plaintiffs to disprove the defendants' record title. They attempted to sustain that burden by showing that the deeds were not in the possession of the grantees at the time of the grantor's death, were not found in Miss Bair's library table drawer until after both the grantor and Miss Bair had died, and that when or by whom they were placed there was not shown. They argue that they may have been put there after Miss Bair's death by some designing person who knew they would be discovered by Kline.

Attention is directed to the testimony of Kline, who stated that he understood the deeds were to be placed with the will and that only the will was returned to him; to the grantees' lack of any knowledge of the existence of the deeds until May 18, 1936; to the inability to account for the third deed drawn by Kline; to the finding of an undelivered deed in Mrs. Rumbaugh's safe deposit box. Emphasis is laid on the absence of testimony accounting for the whereabouts of the deeds from the date they were executed until May 17, 1936, and on the failure of Miss Bair to deliver them to the grantees prior to her death. The appellants contend that those circumstances combined are sufficient to overcome the inference of a delivery of the deeds. They, undoubtedly, were proper for the consideration of the chancellor, but they do not necessarily overthrow the prima facie case that established title in the defendants. The chancellor sat as a judge, he saw and heard the witnesses, and his findings when affirmed by the court in banc are entitled to the faith and credit of a verdict: *H. P. Foley Co. v. Barnett et al.*, 303 Pa. 218, 154 A. 391; *Garland v. Trout*, 303 Pa. 545, 154 A. 926.

There were other matters to be properly considered than those outlined by appellants. The natural inference is that the grantor must have intended to convey the property described in the deeds, otherwise she would not have gone to the expense and trouble of having them prepared and executed. There is nothing in the evidence to show that she thereafter changed her mind. If she had, very probably she would have destroyed the two deeds, as that is what she evidently did with the third deed. She at least would have kept them in her safe deposit box where the other undelivered deed was found. Furthermore, if she had not intended that the deeds were to be effective, in all probability

she would have disposed of her real estate, as well as her personalty, by will.

The evidence indicated that a kindly relationship existed between Mrs. Rumbaugh and her stepsons, which rather tends to confirm the theory that she never altered her original intention. She named Lloyd as one of the executors of her last will and consulted him on occasions about her business. She had acquired considerable property from the father and it was only natural that she would want his sons rather than her collateral relations to participate therein after her death. No reason appears for depriving them and her only sister of sharing in any part of her estate except to the extent of the nominal sum of one dollar.

Lloyd Rumbaugh testified that Mrs. Rumbaugh stated to him that after her death the "place you are living in will belong to you and your brother." The appellants challenge the competency of this witness under section 5 of the Act of May 23, 1887, P. L. 158 (28 PS §322). The admission in evidence of the executed and recorded deeds established, prima facie, valid conveyances, as heretofore stated. All that the appellants are asking is the cancellation of these admittedly signed, acknowledged, and presumptively delivered instruments. The testimony of the witness tended to support their validity, and was, therefore, favorable, not adverse, to Mrs. Rumbaugh's action. The interest of each appellant is antagonistic to the decedent. They do not stand in the place of the deceased aunt and represent her interest. They are acting in opposition to her deeds of conveyance: *Boyd et al. v. Kilmer*, 285 Pa. 533, 540, 132 A. 709; *King et al. v. Lemmer*, 315 Pa. 254, 173 A. 176.

Nothing appears in the evidence to justify an inference that any person is guilty of fraud or misconduct, or that Mrs. Rumbaugh was not an intelligent woman, entirely capable of handling her own affairs. She cer-

tainly was experienced in conveying property, as the records in the office of the Recorder of Deeds of Westmoreland County show that from 1908 to 1931, inclusive, she had joined with her sister in the conveyance of approximately one hundred pieces of real estate.

It is not essential that a deed be delivered directly to the grantee; a delivery to any other person for him is sufficient, as it has the same effect in the hands of the custodian as if delivered to the party beneficially entitled: *Eckman v. Eckman,* 55 Pa. 269, 276; *Lewis v. Merryman et al.,* 271 Pa. 255, 257, 114 A. 655. In *Stephens v. Huss,* 54 Pa. 20, 26, the court said: "If [the deed] was delivered by the grantor to any person in his lifetime, to be delivered to the grantee after his decease, it was a good delivery, upon the happening of the contingency, and relates back so as to divest the title of the grantor by relation from the first delivery." While there was no direct proof of a delivery of the deeds, that is not necessary; a delivery may be inferred or presumed by circumstances: *Kanawell et al. v. Miller et al.,* 262 Pa. 9, 104 A. 861. The reasonable inference from all the facts adduced is that Mrs. Rumbaugh placed these deeds in Miss Bair's hands, to be delivered after her death to the grantees named therein. Ordinarily, one would have expected Miss Bair to deliver them but it must be borne in mind that this elderly woman was ill for a long period before her death with infirmities incident to her advanced age. As the learned chancellor said, she might have forgotten her obligations with regards to the deeds in question.

The appellants, in support of their position that the burden of proof shifted in view of the circumstances under which possession of the deeds was obtained and that the defendants were required to show a valid delivery thereof, cite *Leiser et al. v. Hartel,* 315 Pa. 537, 539, 174 A. 106. The chancellor there found that deeds in the grantee's possession for a number

of years prior to the grantor's death and recorded by him after her death were valid. This finding was affirmed by the court in banc. The Supreme Court held that the evidence did not warrant the finding. There were very suspicious circumstances in that case in connection with obtaining possession of the deeds, which are not present in the case at bar. The present Chief Justice, in the course of his opinion, took occasion to state that the court did not mean to depart in the slightest particular from its decision in *Cragin's Est.*, 274 Pa. 1, 117 A. 445, where it was held that, when a deed is signed and acknowledged before a public officer and delivered, the possession of the grantee is established. A presumption thereupon arises that an absolute and unconditional delivery is intended. In *Leahey et al. v. Leahey et al.*, 309 Pa. 347, 163 A. 677, also cited by appellants, the deed attempted to be cancelled was found in the grantor's safe at the time of her death. Neither these decisions nor those in the other cases cited by the appellants, to which it is unnecessary to refer, control this case.

Considering all the testimony, we are of the opinion that it was insufficient to require the court to grant appellants equitable relief.

Decree of the learned court below is affirmed, at appellants' costs.