## Birnbaum Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Fox, Rothschild, O'Brien & Frankel* and *Israel Packel*, for exceptant.

*Walter B. Gibbons*, contra.

SHOYER, J., February 19, 1968—The beneficiary of a tentative trust, which was withdrawn by testator in his lifetime, makes claim to the sum of $10,000, which had been maintained in the savings account for a period of years. The auditing judge found as a fact that decedent had no intention to make the savings account irrevocable and dismissed the claim. To this finding, and also the ruling of the court excluding the testimony of claimant, exceptions have been filed.

Decedent opened the savings account on August 29, 1955, in the Liberty Real Estate Trust Company with a deposit of $1,636.14. The account was entitled in the name of decedent in trust for Jennie Newman. Jennie was decedent's sister and apparently his long time business employe. The bank's ledger card showed that when the account grew to $10,216.51 on January 7, 1957, the first withdrawal of $216.51 was made on that date.

In January or February of each year thereafter, withdrawals which approximated or equaled the accu-

mulated interest were made, until January 19, 1962, when $900 was withdrawn. This and the later withdrawals obviously comprised more than interest, and must have included what the auditing judge called principal for the sake of convenience. On February 1, 1963, $1,207.12 was withdrawn. There was another withdrawal of $900, and on January 16, 1964, the balance of $7,590.51 was withdrawn and the account closed.

Decedent died on June 14, 1966, leaving a will dated May 17, 1966. After bequests of $1,000 each to Jennie and a brother, Albert, testator gave the residue of his estate to his wife, who survived him.

A former employe, Harry L. Friedman, now 77 years of age, testified that at the end of his first week of employment in 1959 or 1960, when he went to get his pay, he told decedent that the latter should take better care of his sister, Jennie. Thereupon decedent showed him a book from his desk and said, "This belongs to Jennie, $10,000. I take care of my sister". Previously the witness was a stranger to decedent.

A son, Ivan, who last saw his father in December 1963, testified that commencing in 1955 he and his father had many discussions about taking care of Jennie, since "she had done so much work down the place. He had spoken many times about starting a trust fund for Jennie. In about 1957 he said that he had started a trust fund for Jennie and that it would be in the amount of $10,000 and that it would take care of Jennie no matter what happened to her. He said—this is verbatim—that he would take care of Jennie but not like his brother Manny. And it was 1957 that he showed me a book for the trust fund so he had spoken about it many times that he was going to start a trust fund for Jennie and he showed me the book and said, 'There's the $10,000. I said I was starting a trust fund for her. Now, this is for Jennie.' In

the ensuing years after that we have had many discussions about the family and he always referred to the trust fund for Jennie and that he was taking care of his sister".

Ivan named several other persons to whom his father had mentioned "Jennie's trust fund". He admitted that Jennie and his father had a falling out in 1963.

When Jennie was called to testify that the savings account was shown to her in decedent's lifetime and she was told that this money was hers, she was ruled incompetent under the Act of May 23, 1887, P. L. 158 sec. 5(a), 28 PS §322, the so-called "Dead Man's Rule".

A deposit in a savings account in trust makes out a prima facie case of a revocable trust only. This has been our law since Pennsylvania adopted the New York rule of tentative, or "Totten", trusts in Scanlon's Estate, 313 Pa. 424, in 1933. Such a trust may be made irrevocable by the depositor in the beginning or later, but only by evidence which rises to the high standard which our courts have characterized as "clear and unambiguous": Tunnell's Estate, 325 Pa. 554, 556.

Thus, in Ingels Estate, 372 Pa. 171, 172, the court was faced with the problem of deciding the quantum of evidence required to establish that a tentative trust had become irrevocable. Decedent, after opening the account in her name "in trust for James M. Peck" wrote the latter saying that "as a graduating gift, I have had that money left in the Peoples-Pittsburg Bank 'The Oakland Branch', put in *trust* for you and your heirs. It is only a few thousand dollars, but when I die, it may come in handy, for you . . ." Later, decedent made two unexplained withdrawals of $100 each, and six days before she died she closed the account and redeposited the withdrawal of $6,747.35 in

a checking account in her own name in another bank.

In dismissing Peck's claim, our Supreme Court said, page 177:

". . . No reason appears why savings accounts should be treated differently from other property for this purpose [i. e., as to making them irrevocable], and we therefore apply the general rule that a trust does not arise unless the intent of the alleged settlor to create one clearly appears. Thus in Tunnell's Estate [supra] we said . . .: 'The burden of proving their equitable title was on claimants. Such a trust "must be created by clear and unambiguous language or conduct, it cannot arise from loose statements admitting possible inferences consistent with other relationships". . . . A similar burden rested on appellant herein to produce evidence of "clear and unambiguous language or conduct" indicating that Mrs. Ingels intended to make the tentative trust irrevocable' ".

In Ackerman Estate, 34 D. & C. 2d 413, 14 Fiduc. Rep. 439, relied on by claimant, the auditing judge found that decedent had made the trusts irrevocable for his daughter prior to his death. He retained possession of the passbooks in his room and showed his daughter just where he kept them so she could obtain them when needed. She was a ward of the Department of Welfare, living with foster parents. He told her when he made deposits and when the interest was added to the account. The only withdrawals he made were to supply his daughter's needs, none for his personal use. Obviously, the evidence in Ackerman was far stronger proof of irrevocability than that presented in behalf of Jennie.

While it has been said that notification by the depositor, or delivery of the bank book, to the beneficiary is some evidence of an intention that the trust should be irrevocable (see Scanlon's Estate, supra, at p. 427; 1 Restatement of Trusts 2d §58, comment *a*; Scott on

Trusts, 3rd ed. (1967), §58.1), Ingels Estate is authority for the rule that something in addition to notice is required. So, also, in the case of delivery of the passbook, the trust does not necessarily become irrevocable. "There must be a delivery, coupled with words of a gift or a declaration that the depositor is thereby giving to the cestui que trust the money to the credit of the depositor: [citing cases]": Bearinger's Estate, 336 Pa. 253, 256.

The intention of the donor, as expressed by his words and conduct, is the factor which determines whether or not the trust has been made irrevocable. We find in this record neither words of irrevocability, nor conduct equally and unequivocally expressive, such, e. g., as an unconditional delivery of the book with the expressed purpose of making an absolute gift of the equitable estate.

The learned auditing judge was not satisfied that the testimony in the instant case was "clear and unambiguous". We concur in his appraisal of the testimony, and unanimously approve his finding of fact that decedent had no intention of making the trust account for Jennie irrevocable.

What we have said above also disposes of the contention that Jennie's testimony was excluded in error, for claimant's counsel in his brief concedes that if there were inadequate evidence of an irrevocable trust, she would be barred from testifying. He cites Chambley v. Rumbaugh, 132 Pa. Superior Ct. 312, 318, affirmed 333 Pa. 319, on behalf of his client. There, a prima facie case had been established for the grantee by placing in evidence certain executed and recorded deeds before the grantee was allowed to testify. Our Supreme Court, in affirming, stated that this evidence as to a deed constituted "prima facie evidence of its delivery, which, however, is . . . rebuttable". By contrast, the opening of the instant sav-

ings account was prima facie *revocable*, as we have shown, not *irrevocable*. Accord: Donsavage Estate, 420 Pa. 587, 601.

The exceptions are dismissed and the adjudication is confirmed absolutely.